UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FREDERICK JOHN SENNELLO,
  *Plaintiff*,

  v.

NANCY A. BERRYHILL,
*Deputy Commissioner for Operations*, *Social Security Administration*,
  *Defendant*.

No. 3:17-cv-1539 (VAB)

**RULING ON MOTION TO AFFIRM COMMISSIONER'S DECISION**

Frederick Sennello ("Plaintiff"), proceeding *pro se*, filed a Social Security disability and supplemental security income claim under Section 205(g) of the Social Security Act, as amended by 42 U.S.C. § 405(g). Nancy Berryhill, Deputy Commissioner for Operations ("Commissioner") moved for an order affirming the Commissioner's decision. Mr. Sennello has not responded.

For the following greasons, the Court **GRANTS** Defendant's motion to affirm the Commissioner's decision.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

  **A. Factual Allegations**

Mr. Sennello alleges that he suffers from chronic back and shoulder pain due to degenerative diseases in his cervical spine and a central disc protrusion in his lumbar spine. ECF No. 10-7, at 61. On February 22, 2015, Mr. Sennello saw Dr. Panagiotis Kompotiatis about his chronic back pain and explained that he had both a history of lifting heavy objects and increasing pain radiating from his lower back and neck. *Id.* A physical examination and March 13, 2015 MRI revealed that his cervical and lumbar spine revealed foraminal narrowing, spinal stenosis,

1

neural foramen, cord compression, degenerative disk disease, and a small disk protrusion. *Id.* Beginning March 11, 2015, Mr. Sennello reported to physical therapy twice a week for eight weeks and his physical therapist gave him an at-home exercise plan. *Id.* Mr. Sennello's May 11, 2015 discharge indicated that he did not meet his long-term therapy goals. At a May 13, 2015 follow-up visit, Dr. Kompotiatis allegedly referred Mr. Sennello for neurosurgery treatment. *Id.*

In addition to his physical limitations, Mr. Sennello claims that he suffers from depression, mood disorders, impulse control disorder, bipolar affective disorder, and anxiety. *Id.* He alleges that symptoms included loss of appetite, decreased focus, and lack of energy. *Id.* Throughout his treatment, Dr. Ljudmil Kljusev noted that Mr. Sennello's mood and affect were restricted and he showed signs of paranoia and pressured speech. *Id.*

Mr. Sennello claims to have continued psychiatric treatment with Dr. Linda Wolf to regain the level of concentration needed to perform his job without stress distractions and impulses. *Id.* at 62. Dr. Lee Combrinck-Graham also noted that Mr. Sennello had a history of psychiatric treatment lasting more than twelve months, that he had experienced social withdrawal, and that he had received treatment at Lifebridge Community Services since May of 2014. *Id.* Moreover, Mr. Sennello's depressive symptoms affected his ability to perform daily activities, which resulted in limited social functioning, deficiencies in concentration and persistence, and an inability to complete tasks on time. *Id.* These deficiencies allegedly resulted in deteriorating work-life experiences. *Id.*

Because of alleged right hip osteoarthritis, spinal stenosis, cervical degenerative disc disease, and bipolar disorder, Mr. Sennello sought Social Security disability benefits. ECF No. 1, at 2. Following a denial of his application for disability benefits, Mr. Sennello requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on December 7, 2015. *Id.*

at 3. At the ALJ hearing, Mr. Sennello made two arguments in favor of receiving Social Security disability benefits.

First, Mr. Sennello's degenerative disc disease and nerve root compression have led to lower back pain, neck pain, and occasional right hand weakness. ECF No. 10-7, at 62. This caused reduced strength and range of motion in those areas, resulting in severe medical condition under 1.04(A). *Id.*

Second, Mr. Sennello is unable to meet the demands of his past or any other work due to his medical conditions. Mr. Sennello argued that he was unable to undertake his former job as a material handler lifting up to fifty pounds during the twelve-hour shifts because he could no longer handle the walking, climbing, and standing associated with the job due to his physical pain. *Id.* at 63. Mr. Sennello also argued that he would not be able to attain gainful employment because of the above-mentioned limitations in his back, legs, shoulders, and hands. *Id.* In his view, the combination of physical limitations and mental health challenges resulted in an inability to sustain full-time work. *Id.*

At the hearing, Mr. Sennello testified that he could work part-time, drive, dress himself, bathe himself, groom himself, do laundry, go grocery shopping, clean the house, but that completing household chores created some difficulty. ECF No. 10-3, at 49–50, 53. Mr. Sennello also cares for his wife, who is on disability. *Id.* at 53. Mr. Sennello testified that he received unemployment benefits, which indicated that he was willing and able to work. *Id.* at 49. But he argued that he could not work a full eight-hour day. *Id.* Mr. Sennello claimed that he had a driver's license and would be able to drive up to an hour. *Id.* at 52. He also testified that he had back, neck, and hip pain every day, and he testified that walking, lifting, or twisting aggravated his pain. *Id.* at 54–55.

The ALJ also heard from a vocational expert who testified to Mr. Sennello's ability to work as an assembler, small products packer, and bench inspector. *Id.* at 8. In his post-hearing rebuttal, Mr. Sennello maintained that his debilitating conditions prohibited him from substantial gainful activity. ECF No. 10-7, at 65. Mr. Sennello objected to the four components of the expert's testimony and argued that: (1) the expert lacked qualifications to testify to jobs in the local, regional, or national economy; (2) the expert's methodology lacked relevant job data; (3) that jobs can be performed by unskilled workers; and (4) the expert's response to a hypothetical limitation on his ability to sit and stand. *Id.* at 65–67. Mr. Sennello ultimately questioned whether there were enough jobs in the national economy for him to be gainfully employed and argued that the unfavorable decision on the matter required a supplemental hearing. *Id.* at 68–69.

On January 28, 2016, the ALJ denied Mr. Sennello's claim. ECF No. 1, at 3. And, on August 22, 2017, the Social Security Appeals Council affirmed the decision, which Mr. Sennello received on August 29, 2017. *Id.* According to the Appeals Council, although Mr. Sennello did not file his request for review on time, there was good reason for the delay. ECF No. 1-1. The Appeals Council nevertheless denied his request because it found no reason to disturb the ALJ's decision. *Id.* On appeal, Mr. Sennello contends that he is "disabled and unable to work and the Appeal Council failed to consider [his] medical issues fully." ECF No. 1, at 4.

### B. Procedural History

On September 2017, Mr. Sennello filed his Complaint against the Nancy Berryhill, Deputy Commissioner for Operations for the Social Security Administration. ECF No. 1.

On December 5, 2017, the Commissioner filed an Answer. ECF No. 10.

On April 6, 2018, the Commissioner moved to affirm the decision. ECF No. 15. Mr. Sennello's response was due on April 21, 2018. Mr. Sennello did not respond.

## II. STANDARD OF REVIEW

To find disability under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." *Smith v. Berryhill*, 740 Fed. App'x. 721, 722 (2d Cir. 2018) (summary order) (citing 20 C.F.R. § 404.1505(a)).

In reviewing challenges to the Commissioner's decision, a court must determine whether the ALJ's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Brown v. Apfel*, 174 F.3d 59, 61 (2d Cir. 1999). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brown*, 174 F.3d at 61 (internal quotation marks omitted) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). To determine "whether the agency's findings are supported by substantial evidence, 'the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).

## III. DISCUSSION

To be eligible for disability insurance benefits, a claimant must show that he or she is "unable 'to engage in any substantial gainful activity by reason of medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (citing 42 U.S.C. § 423(d)). The Social Security Administration follows a five-step process to evaluate a claim of social security benefits:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether

the claimant has a 'severe impairment' which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him [*per se*] disabled . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Talavera*, 697 F.3d at 151 (alterations in original) (quotation omitted). "The claimant bears the burden of proof in the first four steps of the sequential inquiry; the Commissioner bears the burden in the last." *Selian*, 708 F.3d at 418 (citations omitted). Here, because it is undisputed Mr. Sennello meets the first two factors and the fourth factor outlined in *Talavera*, the Court shall only review whether there is substantial evidence that Mr. Sennello's injury is listed within Appendix 1 of 20 C.F.R., Part 404, Subpart P, App'x 1 and whether there is other work Mr. Sennello could perform.

The Commissioner's argument for affirmance is two-fold. First, Mr. Sennello failed to meet his obligations under the Court's scheduling order because he has neither stipulated to facts nor filed a motion for remand.[1] Second, Mr. Sennello's challenge fails on the merits. The Commissioner argues that, while Mr. Sennello had not engaged in gainful activity since his disability and several impairments, the ALJ properly determined that none of the impairments met the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Second the Commissioner argues that Mr. Sennello did not satisfy the disability criteria under Social

---

[1] *See Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) ("district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases"); ECF No. 12 ("Plaintiff shall file a motion to reverse and/or remand and a supporting memorandum of law on or before FEBRUARY 5, 2018. Defendant shall file a motion to affirm or a motion for voluntary remand on or before APRIL 6, 2018. Plaintiff may file a reply brief pursuant to Local Rule 7(d) on or before APRIL 20, 2018 . . . Motions filed by the parties must comply with the requirements set forth above and in the Local Rules of Civil Procedure. Failure to comply may result in denial of the motion.").

Security regulations and a vocational specialist certified him for a limited range of light work. The Commissioner further argues that Mr. Sennello's mental health issues only mildly limit him.

Mr. Sennello has not responded to the Commissioner's arguments, but, based on a review of the entire record, the Court agrees with the Commissioner.

### A. Medical Impairments

As an initial matter, the Court has limited jurisdiction to review the Commissioner's conclusion. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence"); *Smith v. Berryhill*, 740 Fed. App'x. 721, 726 (summary order) (same). An ALJ decision "may be set aside only due to legal error or if it is not supported by substantial evidence." *Crossman v. Astrue*, 783 F. Supp. 2d 300, 302–03 (D. Conn. 2010). "[S]ubstantial evidence" is less than a preponderance of the evidence, but "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Here, there is no evidence of legal error and there is substantial evidence to support the conclusion.

The Commissioner argues that the ALJ considered and rejected Mr. Sennello's arguments regarding both sub-section 1.02 and 2.04 of the appendix to the Social Security regulations for two reasons: First, Mr. Sennello's subjective complaints lacked credibility. Second, there was insufficient evidence of disability.

According to Mr. Sennello's Pre-Hearing Memorandum, Mr. Sennello's physical injuries have led to a reduced strength and range of motion in his back, neck, legs, and arms, which meets the criteria for a severe medical condition under 1.04(A). ECF No. 10-7, at 62. Alternatively, Mr. Sennello claims that he is unable to meet the demands of his past or any other work due to his medical conditions. *Id.* at 63. Mr. Sennello argued that

he was cannot undertake his former job as a material handler lifting up to fifty pounds during the twelve-hour shifts. He asserted an inability to walk, climb, and stand, as required by the job, because of his physical pain. *Id.*

There is nothing in the record, however, to indicate that the ALJ's conclusion was unreasonable. First, "[c]redibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." *Pietrunti v. Director, Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997). Before the hearing, Mr. Sennello argued that he was unable to work because his physical injuries reduced his strength and range of motion in his neck, back, arms, and legs. ECF No. 10-7, at 62. At the hearing, a vocational expert testified that there are jobs Mr. Sennello can do, consistent with his physical limitations. ECF No. 10-3, at 73. Within the contours of this dispute, the ALJ may conclude that one medical source is more credible than another. And, because Mr. Sennello has not responded, there is no basis for the Court to doubt the credibility of the vocational expert. *See Cage*, 692 F.3d at 122 ("In our review, we defer to the Commissioner's resolution of conflicting evidence"); *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013) (summary order) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

Second, there is insufficient evidence that Mr. Sennello has a disabling injury. Under Social Security regulations, an individual must have "[m]ajor dysfunction of a joint" and "gross anatomical deformity" coupled with "stiffness with signs of a limitation of motion or other abnormal motion of the affected joint." 20 C.F.R., Part 404, Subpart P, App'x, 1.02. Alternatively, a disorder of the spine "resulting in compromise of the nerve

8

root [or] spinal cord" with evidence of "nerve root compression . . . accompanied by sensory or reflexive loss" or "[s]pinal arachnoiditis" or "[l]umbar spinal stenosis" can make someone eligible for Social Security disability benefits. 20 C.F.R., Part 404, Subpart P, App'x, 1.04.

Here, while Mr. Sennello testified that his injuries limited his strength and range of motion, *see* ECF No. 10-7, at 62, he has cited no evidence of the "gross anatomical deformity" or any of the spinal conditions required by the regulations. *See* 20 C.F.R., Part 404, Subpart P, App'x, 1.02, 1.04. To the contrary, at the time of the ALJ determination, Mr. Sennello received unemployment benefits, which means that, by his own account, Mr. Sennello was both willing and able to work. ECF No. 10-3, at 49. Mr. Sennello also testified that he could drive, dress himself, bathe himself, groom himself, do laundry, go grocery shopping, clean the house, and care for his disabled wife *Id.* at 49–50, 53. Given Mr. Sennello's own testimony, there is an insufficient basis for this Court to overturn the ALJ's evidentiary conclusions. *See Cage,* 692 F.3d at 122 ("we defer to the Commissioner's resolution of conflicting evidence"). As a result, there is not substantial objective medical evidence to overturn the ALJ's conclusions.

B.  **Alternative Work Plaintiff Could Perform**

As for Step Five, Mr. Sennello's own testimony provides substantial evidence that there is other work he could perform. He testified to an ability to work part-time, drive, dress himself, bathe himself, and groom himself, even though he experiences difficulty in completing some household chores. ECF No. 15, at 7; *see also* ECF No. 10-3, at 24 ("In activities of daily living, the claimant has a mild restriction . . . he uses public transportation, can leave his home independently, goes grocery shopping in stores, can independently manage his personal care and

grooming, and uses the internet . . . He also helps care for his disabled wife, can manage his own finances, and is able to drive.).

Moreover, a vocational expert testified to Mr. Sennello's ability to work as an assembler, small products packer, or sorter. ECF No. 10-3, at 71–74. While Mr. Sennello raises issues with the use of a vocational expert and the bases for any expert testimony provided, the vocational expert opined only about jobs Mr. Sennello could perform, consistent with physical limitations expressed by him and supported by the medical evidence in the record. *Id.*

Accordingly, based on Mr. Sennello's limited need for assistance in day-to-day activities and the vocational expert's testimony of his ability to work, the ALJ's prior finding that Mr. Sennello did not meet the threshold for Social Security benefits is affirmed. *See Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015) (summary order) ("A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits."); *Matta*, 508 Fed. App'x at 56 ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

**IV. CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendant's motion to affirm the Commissioner's decision.

**SO ORDERED** at Bridgeport, Connecticut, this 22nd day of January 2019.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE